1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

Mar 30, 2023

SEAN F. McAVOY, CLERK

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   MICKI R.,[1]                          | No. 1:22-cv-03006-MKD

8                  Plaintiff,            | ORDER DENYING
                                          | PLAINTIFF'S MOTION FOR
9         v.                             | SUMMARY JUDGMENT AND
                                          | GRANTING DEFENDANT'S
10  KILOLO KIJAKAZI, ACTING              | MOTION FOR SUMMARY
    COMMISSIONER OF SOCIAL              | JUDGMENT
11  SECURITY,                            |
                                          | **ECF Nos. 12, 13**
12                 Defendant.           |

13        Before the Court are the parties' cross-motions for summary judgment.  ECF

14  Nos. 12, 13.  The Court, having reviewed the administrative record and the parties'

15  briefing, is fully informed.  For the reasons discussed below, the Court denies

16  Plaintiff's motion, ECF No. 12, and grants Defendant's motion, ECF No. 13.

17  _____

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

404.1502(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

ORDER - 3

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

1    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

2    capable of performing other work; and 2) such work "exists in significant numbers

3    in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

4    386, 389 (9th Cir. 2012).

5                                      **ALJ'S FINDINGS**

6           On October 9, 2013, Plaintiff applied for Title II disability insurance benefits

7    alleging an amended disability onset date of September 30, 2013.  Tr. 79, 208-09,

8    501-02.  The application was denied initially and on reconsideration.  Tr. 94-96,

9    98-99.  Plaintiff appeared before an administrative law judge (ALJ) on May 4,

10   2017.  Tr. 36-78.  On June 22, 2017, the ALJ denied Plaintiff's claim.  Tr. 12-32.

11          Plaintiff appealed the denial, which resulted in a remand.  Tr. 618-35.

12   Plaintiff appeared for a remand hearing on March 5, 2020.  Tr. 538-68.  A

13   supplemental hearing was held November 9, 2020, to take medical expert

14   testimony.  Tr. 569-87.  On January 12, 2021, the ALJ again denied Plaintiff's

15   claim.  Tr. 498-521.

16          At step one of the sequential evaluation process, the ALJ found Plaintiff,

17   who met the insured status requirements through September 30, 2013, has not

18   engaged in substantial gainful activity since September 30, 2013.  Tr. 504.  At step

19   two, the ALJ found that Plaintiff had the following severe impairments:

20

ORDER - 6

1  degenerative disc disease (DDD); inflammatory bowel syndrome (IBS); and

2  depressive/bipolar disorder. *Id.*

3       At step three, the ALJ found Plaintiff does not have an impairment or

4  combination of impairments that meets or medically equals the severity of a listed

5  impairment. Tr. 505. The ALJ then concluded that, at the time of her date last

6  insured, Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] required the opportunity to alternate between sitting and
> standing at will throughout the workday; she could occasionally climb
> ramps and stairs; she could never climb ladders, ropes, or scaffolds;
> she could occasionally balance, stoop, and kneel; she could never
> crouch or crawl; she could occasionally reach overhead and could
> frequently reach in all other directions; she could occasionally use
> foot controls; she was limited to simple routine work, in a workplace
> with no more than occasional workplace changes; and she could have
> occasional superficial contact with coworkers and the public.

12 Tr. 507.

13      At step four, the ALJ found Plaintiff was unable to perform any of her past

14 relevant work through the date last insured. Tr. 512. At step five, the ALJ found

15 that, considering Plaintiff's age, education, work experience, RFC, and testimony

16 from the vocational expert, there were jobs that existed in significant numbers in

17 the national economy that Plaintiff could perform, such as basket filler, egg sorter,

18 and garment sorter. Tr. 513. Therefore, the ALJ concluded Plaintiff was not under

19 a disability, as defined in the Social Security Act, from the alleged onset date of

20 September 30, 2013, through the date last insured. *Id.*

ORDER - 7

On November 16, 2021, the Appeals Council denied review of the ALJ's decision, Tr. 491-97, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-five analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ properly evaluated lay witness evidence.

ECF No. 12 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred when considering the opinions of Robert Thompson, M.D.; Teresa Stone, ARNP; Olegario Ignacio, M.D.; and Arthur Lorber, M.D. ECF No. 12 at 4-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER - 8

1    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

2    *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

3    Generally, a treating physician's opinion carries more weight than an examining

4    physician's, and an examining physician's opinion carries more weight than a

5    reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

6    to opinions that are explained than to those that are not, and to the opinions of

7    specialists concerning matters relating to their specialty over that of

8    nonspecialists." *Id.* (citations omitted).

9        If a treating or examining physician's opinion is uncontradicted, the ALJ

10   may reject it only by offering "clear and convincing reasons that are supported by

11   substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

12   "However, the ALJ need not accept the opinion of any physician, including a

13   treating physician, if that opinion is brief, conclusory and inadequately supported

14   by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

15   (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

16   examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

17   may only reject it by providing specific and legitimate reasons that are supported

18   by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

19   F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may

20

ORDER - 9

serve as substantial evidence if it is supported by other independent evidence in the

record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered

'[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

2014) (alteration in original); *see* 20 C.F.R. § 404.1502 (2011)[2] (citing to 20 C.F.R.

§ 416.1513(a)) (acceptable medical sources are licensed physicians, licensed or

certified psychologists, licensed optometrists, licensed podiatrists, and qualified

speech-language pathologists)).  However, an ALJ is required to consider evidence

from non-acceptable medical sources, such as therapists.  20 C.F.R. § 404.1527(f).

An ALJ may reject the opinion of a non-acceptable medical source by giving

reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

   *1. Dr. Thompson*

   Dr. Thompson, a nonexamining medical expert, testified at Plaintiff's 2020

hearing and rendered an opinion on her functioning.  Tr. 574-80.  Dr. Thompson

_____

[2] This section was amended in 2017, effective March 27, 2017, and in 2018,

effective October 15, 2018.  *See* 20 C.F.R. § 416.902.  Plaintiff filed her claim

before March 27, 2017, and the Court applies the regulation in effect at the time

Plaintiff's claim was filed.  *See* 20 C.F.R. § 416.902 (noting changes apply only for

claims filed on or after March 27, 2017).

ORDER - 10

1  stated Plaintiff has multiple non-severe impairments and listed several other

2  impairments but did not specify which impairments were severe impairments at the

3  date last insured.  Tr. 575-77.  Dr. Thompson opined Plaintiff's impairments did

4  not meet or equal a listing; Plaintiff could lift/carry 10 pounds frequently and 11 to

5  20 pounds occasionally; stand/walk for two hours at a time for a total of six hours;

6  sit for two hours at a time for a total of six hours; occasionally use foot controls

7  bilaterally and climb ramps/stairs; no crouching, crawling, nor working at

8  unprotected heights or around moving mechanical parts.  Tr. 577-78.  The ALJ

9  adopted Dr. Thompson's opinion in part.  Tr. 509.  An ALJ may reject the opinion

10  of a non-examining physical only by reference to specific evidence in the medical

11  record.  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

12      Plaintiff contends the ALJ misstated Dr. Thompson's opinion, because Dr.

13  Thompson stated Plaintiff can occasionally lift 11 to 20 pounds, while the ALJ

14  found Plaintiff can occasionally lift 20 pounds.  ECF No. 12 at 5-6.  Plaintiff

15  contends the most she can do is the "lowest end of the range given." *Id.* at 6.

16  Plaintiff further contends the limitation indicates that some days she may be to lift

17  20 pounds, but other days she may be only able to lift 11 pounds.  Tr. 584; ECF

18  No. 12 at 6.  However, an RFC is the most someone can do.  SSR 96-8p.  Dr.

19  Thompson opined Plaintiff can lift/carry up to 20 pounds.  Tr. 578.  The ALJ

20  reasonably interpreted Dr. Thompson's opinion as a finding that Plaintiff can

ORDER - 11

1    occasionally lift up to 20 pounds.  Plaintiff does not challenge the ALJ's rejection

2    of any other portion of Dr. Thompson's opinion, thus any challenge is waived.  *See*

3    *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

4    The ALJ did not err in considering Dr. Thompson's opinion.

5        *2. Ms. Stone*

6        On December 15, 2015, Ms. Stone, a treating nurse practitioner, rendered an

7    opinion on Plaintiff's functioning.  Tr. 378-80.  Ms. Stone opined Plaintiff would

8    miss an average of four or more days per month of work; Plaintiff would need to

9    lie on the floor twice per day for 15 minutes each time; Plaintiff cannot travel by

10    bus or subway on a daily basis; and Plaintiff was severely limited and unable to

11    meet the demands of full-time sedentary work.  *Id.*  Ms. Stone opined the

12    limitations had existed since at least October 2014.  Tr. 380.  The ALJ gave little

13    weight to Ms. Stone's opinion.  Tr. 511.  As Ms. Stone is not an acceptable

14    medical source, the ALJ was required to give germane reasons to reject the

15    opinion.  *See Ghanim*, 763 F.3d at 1161.

16        First, the ALJ found Ms. Stone did not begin treating Plaintiff until 2014,

17    over a year after the date last insured.  Tr. 511.  Evidence from outside the relevant

18    period in a case is of limited relevance.  *Carmickle,* 533 F.3d at 1165; *see also Fair*

19    *v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (report that predated period at issue was

20    relevant only to proving Plaintiff's condition had worsened); *Turner v. Comm'r of*

ORDER - 12

*Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion rendered more than a year after the date last insured was a germane reason to not address the opinion).  Plaintiff's date last insured is September 30, 2013, and Ms. Stone did not render her opinion until December 2015.  Tr. 511.  Ms. Stone stated she did not begin treating Plaintiff until October 2014 and stated the limitations had existed since at least October 2014.  Tr. 380.  Plaintiff notes the records support a finding that Ms. Stone treated Plaintiff years prior to the date last insured, as this Court previously found.  ECF No. 12 at 7 (citing Tr. 488, 629).  However, the ALJ cited to Ms. Stone's own questionnaire, in which she stated she first treated Plaintiff October 2014.  Tr. 378, 511.

This Court previously found the ALJ erred by failing to address Ms. Stone's opinion, despite the opinion being rendered after the date last insured.  Tr. 628.  Plaintiff contends the ALJ now erred by rejecting the opinion because it was rendered after the date last insured.  ECF No. 12 at 7-8.  However, this Court stated the ALJ was required "to at least address" Ms. Stone's opinion, because it is significant probative evidence.  Tr. 629.  The Court's finding does not preclude the ALJ from giving the opinion less weight due to the opinion being rendered after the relevant period, and by a provider who stated the limitations did not begin until after the relevant period.  This was a germane reason to reject Ms. Stone's opinion.

ORDER - 13

1    Second, the ALJ found Ms. Stone's opinion is not consistent with the

2    objective evidence.  Tr. 511.  A medical opinion may be rejected if it is

3    unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of*

4    *Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278

5    F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

6    2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Plaintiff contends

7    the available objective evidence is consistent with Ms. Stone's opinion, and that

8    Ms. Stone's opinion should not be found inconsistent with the objective evidence

9    when relevant records were missing due to the clinic misplacing them.  ECF No.

10   12 at 8-10.

11   Although there are limited records due to the several years of missing

12   records, the ALJ cited to multiple records before and after the date last insured

13   documenting objective evidence that supports a finding that Plaintiff had less

14   significant limitations than Ms. Stone accounted for in her opinion.  In December

15   2009, Plaintiff had a generally normal examination.  Tr. 508 (citing Tr. 489).  In

16   2010, Plaintiff reported improvement in her symptoms with chiropractic care.  Tr.

17   508 (citing Tr. 410-11, 415-17).  While Plaintiff complained of severe pain in

18   November 2011, her examination was normal except some tenderness in her back.

19   Tr. 490.  In February 2013, she had a normal gait, balance, and coordination, and

20   generally normal examination findings except reduced range of motion in her

ORDER - 14

cervical and lumbar spine.  Tr. 834-35.  In 2014, Plaintiff reported pain medication was effective in controlling her pain.  Tr. 508 (citing Tr. 325).  In November 2014, an MRI showed only mild to moderate findings, and physical therapy and steroid injections were recommended.  Tr. 508 (citing Tr. 464, 479).  Plaintiff also did not seek ongoing care for several periods prior to the date last insured and failed to follow up on a referral.  Tr. 508, 509, 832, 844.  The ALJ reasonably found Ms. Stone's opinion is inconsistent with the limited objective evidence.  This was a germane reason to reject Ms. Stone's opinion.

Third, the ALJ found Ms. Stone's opinion is inconsistent with Plaintiff's activities of daily living.  Tr. 511.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ stated Ms. Stone's opinion is inconsistent with the activities that were noted earlier in the decision.  Tr. 511.  Plaintiff reported she handled household chores, shopped in stores, played competitive pool in a league, and rode her motorcycle during several trips, including a 30-day trip from Washington to Florida in 2013.  Tr. 506.  In October 2012, Plaintiff rode her motorcycle 6,000 miles over a 21-day period.  Tr. 507 (citing Tr. 402).  Plaintiff also reported being able to care for herself "fine," just more slowly.  Tr. 255.  The ALJ reasonably found Plaintiff's ability to engage in such activities, particularly long-distance motorcycle trips lasting multiple

weeks, is inconsistent with Ms. Stone's opinion.  The ALJ gave germane reasons

to reject Ms. Stone's opinion and thus did not error in considering Ms. Stone's

opinion.

### 3. Dr. Ignacio and Dr. Lorber

On October 21, 2014, Dr. Ignacio, a State agency medical consultant,

rendered an opinion on Plaintiff's functioning.  Tr. 88-90.  Dr. Ignacio opined

Plaintiff was limited to lifting/carrying 20 pounds occasionally and 10 pounds

frequently; she could sit for six hours and stand/walk for six hours; she could

frequently climb ramps/stairs, stoop, kneel, crouch, and crawl; she could

occasionally climb ladders/ropes/scaffolds; and she needed to avoid concentrated

exposure to vibration and hazards.  *Id.*  The ALJ adopted Dr. Ignacio's opinion in

part.  Tr. 510.

Dr. Lorber testified at the 2017 hearing and rendered an opinion on

plaintiff's functioning.  Tr. 64-72.  Dr. Lorber opined Plaintiff did not have

limitations prior to the date last insured.  Tr. 72.  The ALJ gave Dr. Lorber's

opinion moderate weight.  Tr. 510.  The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other evidence in the record and

is consistent with it.  *Andrews*, 53 F. at 1041.  Other cases have upheld the

rejection of an examining or treating physician based in part on the testimony of a

non-examining medical advisor when other reasons to reject the opinions of

ORDER - 16

examining and treating physicians exist independent of the non-examining doctor's

opinion.  *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-

55 (9th Cir. 1989).

Plaintiff contends the ALJ erred in giving weight to Dr. Ignacio and Dr.

Lorber's opinions, and in giving more weight to their opinions than given to Ms.

Stone's opinion.  ECF No. 12 at 11-12.  The ALJ found portions of Dr. Ignacio's

opinion was consistent with the longitudinal record, including Plaintiff's activities

of daily living, improvement with medication, and only mild to moderate

degenerative disc disease documented on imaging.  Tr. 510-11.  The ALJ found

Dr. Lorber's opinion was based on medical records from multiple treating sources,

but the more recently submitted medical records support a finding that Plaintiff has

more limitations than Dr. Lorber accounted for.  Tr. 510.  The ALJ reasonably

considered the opinions and analyzed the opinions' consistency with the record and

adopted only the portions of the opinions that were consistent with other evidence.

The ALJ did not err in considering Dr. Ignacio and Dr. Lorber's opinions.  Plaintiff

is not entitled to remand on these grounds.

**B. Step Five**

Plaintiff contends the ALJ erred at step five by making a determination that

is not supported by substantial evidence.  ECF No. 12 at 12-13.  At step five of the

sequential evaluation analysis, the burden shifts to the Commissioner to establish

ORDER - 17

that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran*, 700 F.3d at 389. There is no "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389. However, the Ninth Circuit has held the availability of 25,000 national jobs presents a "close call," but constitutes a significant number of jobs, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014), and also has held that the availability of 1,680 national jobs does not constitute a significant number of jobs. *Beltran*, 700 F.3d at 390. "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines . . . ." *Id*. at 389. A vocational expert's testimony constitutes substantial evidence in support of an ALJ's findings. *Thomas*, 278 F.3d at 960. However, the court may "remand a case when the vocational expert's testimony is 'fundamentally flawed.'" *Dunn v. Colvin*, No. 13cv1219-MMA, 2014 WL 2159275, at *9 (S.D. Cal. May 23, 2014) (citing *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (granting remand where "a reasonable mind would not accept the VE's testimony")).

Plaintiff contends the job numbers provided by Mr. Weiss, the vocational expert at the 2020 hearing, were inaccurate, and that the correct numbers total to an

insufficient number of jobs.  ECF No. 12 at 12-13.  Plaintiff submitted evidence

from SkillTRAN to demonstrate different job numbers than those set forth by Mr.

Weiss.  Tr. 522-26, 533-37, 813-14.  Mr. Weiss testified his testimony was based

on his knowledge from analyzing jobs, his professional experience, and the DOT.

Tr. 581-82.  Mr. Weiss was not asked how he calculated the job numbers.  At a

prior hearing, a different expert testified he used Job Browser Pro for his job

numbers and explained how the numbers are calculated.  ECF No. 12 at 13 (citing

Tr. 560, 566).  However, there is no evidence in the record that Mr. Weiss used the

same methodology as the prior expert to calculate his job numbers.  Mr. Weiss

testified there were 100,000 basket filler positions nationally; 125,000 garment

sorter positions; and 62,010 egg sorter positions.  Tr. 581-82.  Plaintiff contends

there are 214 basket filler jobs, 181 garment sorter positions, and 568 egg sorter

positions.  ECF No. 12 at 11-12.  Plaintiff contends Mr. Weiss testified there are

more egg sorter jobs than there are jobs in the entire OES group.  *Id.*

Plaintiff contends the SkillTRAN evidence she presented is similar to the

evidence in *Buck,* and thus is significant probative evidence the ALJ was required

to address.  ECF No. 13 at 12 (citing *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir.

2017).  The Court in *Buck* believed the vocational expert and Plaintiff's counsel

used the same methodology to calculate the vastly different job numbers, and thus

the conflicting numbers were significant probative evidence.  *Id.* at 1047.  Here,

ORDER - 19

1  there is no evidence that Plaintiff's counsel and Mr. Weiss used the same

2  methodology to determine the job numbers.  Rather, like the Plaintiff in *Kilpatrick*,

3  counsel appears to have used a different methodology than Mr. Weiss for

4  calculating the job numbers, and thus the evidence presented was not significant

5  probative evidence the ALJ was required to address.  *See Kilpatrick v. Kijakazi*, 35

6  F.4th 1187, 1194 (9th Cir. 2022).  Plaintiff is not entitled to remand on these

7  grounds.

8  **C. Plaintiff's Symptom Claims**

9      Plaintiff faults the ALJ for failing to rely on reasons that were clear and

10  convincing in discrediting her symptom claims.  ECF No. 12 at 13-19.  An ALJ

11  engages in a two-step analysis to determine whether to discount a claimant's

12  testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

13  "First, the ALJ must determine whether there is objective medical evidence of an

14  underlying impairment which could reasonably be expected to produce the pain or

15  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

16  "The claimant is not required to show that [the claimant's] impairment could

17  reasonably be expected to cause the severity of the symptom [the claimant] has

18  alleged; [the claimant] need only show that it could reasonably have caused some

19  degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

20

ORDER - 20

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim,* 763 F.3d at 1163 (citations omitted).  General findings are

5    insufficient; rather, the ALJ must identify what symptom claims are being

6    discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

7    F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

8    why it discounted claimant's symptom claims)).  "The clear and convincing

9    [evidence] standard is the most demanding required in Social Security cases."

10   *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

11   *of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

12        Factors to be considered in evaluating the intensity, persistence, and limiting

13   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

14   duration, frequency, and intensity of pain or other symptoms; 3) factors that

15   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

16   side effects of any medication an individual takes or has taken to alleviate pain or

17   other symptoms; 5) treatment, other than medication, an individual receives or has

18   received for relief of pain or other symptoms; 6) any measures other than treatment

19   an individual uses or has used to relieve pain or other symptoms; and 7) any other

20   factors concerning an individual's functional limitations and restrictions due to

1   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

2   404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

3   individual's record," to "determine how symptoms limit ability to perform work-

4   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

5       The ALJ found that Plaintiff's medically determinable impairments could

6   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

7   statements concerning the intensity, persistence, and limiting effects of her

8   symptoms were not entirely consistent with the evidence.  Tr. 508.

9       Plaintiff contends the ALJ erred in repeating portions of the prior ALJ

10  decision.  ECF No. 12 at 14.  While the case was remanded for the ALJ to conduct

11  the five-step analysis anew, the Court did not find any specific errors in the ALJ's

12  analysis of Plaintiff's symptom claims.  Tr. 632.  Although the ALJ repeated some

13  portions of the prior decision, the ALJ complied with the Order, as the ALJ

14  performed the five-step analysis anew and considered Ms. Stone's opinion.

15      *1. Inconsistent Objective Evidence*

16      The ALJ found Plaintiff's symptom claims were inconsistent with the

17  objective evidence.  Tr. 508-11.  An ALJ may not discredit a claimant's symptom

18  testimony and deny benefits solely because the degree of the symptoms alleged is

19  not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

20  857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

ORDER - 22

1  *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

2  However, the objective medical evidence is a relevant factor, along with the

3  medical source's information about the claimant's pain or other symptoms, in

4  determining the severity of a claimant's symptoms and their disabling effects.

5  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

6  A November 2014 spinal MRI documented only mild to moderate findings.

7  Tr. 508 (citing Tr. 479).  In the years leading up to and following the date last

8  insured, the physical examinations documented generally normal range of motion,

9  sensation, reflexes, gait, straight leg raise testing, and strength.  *See, e.g.,* Tr. 336-

10  37, 373, 459, 489, 508-09, 852.  Examinations generally documented at most mild

11  pain with palpation and some limitations in range of motion in the cervical and

12  lumbar spine.  *See, e.g.,* Tr. 322, 337, 373, 459.  The 2013 imaging shows no more

13  than mild findings in the lumbar and cervical spine and moderate findings in the

14  cervical spine.  Tr. 816-18.  In February 2013, Plaintiff rated her back pain at a

15  four out of ten, and she had a normal gait, and generally normal range of motion,

16  with reduced range of motion in her cervical spine and mildly reduced range of

17  motion in her lumbar spine.  Tr. 833-34.  Plaintiff also had normal coordination,

18  sensation, and strength.  Tr. 835.  By 2016, three years after the date last insured,

19  Plaintiff had a slightly antalgic gait, diminished sensation, and decreased reflexes,

20  with a positive straight leg raise test.  Tr. 440.  As to her IBS related symptoms,

Plaintiff reported only experiencing one to two watery stools per day in 2013.  Tr. 509, 832.  While Plaintiff alleges ongoing mental health symptoms, there are only intermittent complaints of mental health symptoms and few abnormal objective findings.  Tr. 510; *see, e.g.,* Tr. 336, 440, 835, 838, 842.

Plaintiff contends that the ALJ erred in finding the objective evidence, or lack thereof, is inconsistent with Plaintiff's claims because there are several years of missing records from one of the medical clinics.  ECF No. 12 at 15.  However, the burden is still on Plaintiff to prove she is disabled.  *See Bayliss*, 427 F.3d at 1217.  The ALJ reasonably found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

### 2. Improvement with Conservative Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's improvement with conservative treatment.  Tr. 508-11.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)).  Additionally, the effectiveness of treatment is a relevant factor in determining the

ORDER - 24

severity of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Plaintiff reported she primarily treated her pain symptoms with chiropractic appointments, and the appointments significantly improved her symptoms.  Tr. 508 (citing Tr. 397, 400, 404-06, 410-11, 415-17).  Plaintiff also reported pain medication was effective in controlling her pain.  Tr. 508 (citing Tr. 325).  Plaintiff attended physical therapy for several weeks in 2015.  Tr. 481, 508.  Plaintiff also used a TENS machine and over the counter medication.  Tr. 335, 474.  Plaintiff had epidural injections in 2016, after the date last insured.  Tr. 441, 445. Additional medication was not prescribed until after the date last insured, and surgery did not take place until 2017.  Tr. 447, 870.  Plaintiff's IBS symptoms were treated conservatively with supplements and enzymes.  Tr. 509 (citing Tr. 832).  Plaintiff contends she had more than conservative treatment but cites to

ORDER - 25

1  evidence of treatment that took place after the date last insured.  ECF No. 12 at 16-

2  17.

3        On this record, the ALJ reasonably concluded that Plaintiff's symptoms

4  when treated with conservative treatment were not as severe as alleged. This

5  finding is supported by substantial evidence and was a clear and convincing reason

6  to discount Plaintiff's symptom complaints.

7        *3.  Lack of Treatment*

8        The ALJ found Plaintiff's lack of treatment was inconsistent with her

9  allegations.  Tr. 508-11.  An unexplained, or inadequately explained, failure to

10  seek treatment or follow a prescribed course of treatment may be considered when

11  evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638

12  (9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of

13  motivation to seek treatment are appropriate considerations in determining the

14  credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240

15  F.3d 1157, 1165-66 (9th Cir. 2001).  When there is no evidence suggesting that the

16  failure to seek or participate in treatment is attributable to a mental impairment

17  rather than a personal preference, it is reasonable for the ALJ to conclude that the

18  level or frequency of treatment is inconsistent with the alleged severity of

19  complaints.  *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of

20  mental health treatment is partly due to a claimant's mental health condition, it

ORDER - 26

1  may be inappropriate to consider a claimant's lack of mental health treatment when

2  evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

3  F.3d 1462, 1465 (9th Cir. 1996).

4      While Plaintiff was referred to a gastrointestinal clinic in 2011, she did not

5  follow-up on the referral.  Tr. 509 (citing Tr. 832).  There is no evidence Plaintiff

6  followed up on mental health counseling nor medication for her reported mental

7  health symptoms in 2013.  Tr. 510.  Plaintiff was prescribed Zoloft in 2014, but

8  Plaintiff reported she stopped taking the medication without consulting her

9  provider.  *Id.* (citing Tr. 459).  Plaintiff declined nerve ablation on multiple

10 occasions, and in 2015 stated that medication was managing her pain "OK" and as

11 long as the medication worked, she was not interested in nerve ablation.  Tr. 511

12 (citing Tr. 378, 380); Tr. 344.

13     Plaintiff contends the gastrointestinal clinic referral was years prior to the

14 alleged onset date, and the nerve ablation was years later, and thus the lack of

15 follow-up is not relevant.  ECF No. 12 at 17.  However, the adjudicative period for

16 this case is a single day, thus the ALJ must consider evidence leading up to and

17 after the date last insured.  Further, evidence of Plaintiff's pain being controlled by

18 medication and her declining another form of treatment years after the date last

19 insured supports a finding that Plaintiff's symptoms were not as severe as she

20

ORDER - 27

alleged at the date last insured.  Plaintiff also offers no explanation as to why she

never saw a gastrointestinal specialist, nor why she did not seek mental health care.

Plaintiff contends the ALJ erred in failing to include limitations related to

her IBS in the RFC.  ECF No. 12 at 18-19.  Plaintiff alleges she would have missed

work every month due to her symptoms making it difficult to leave the home.  *Id.*

However, Plaintiff only had one to two water stools per day and Plaintiff's

symptoms were not severe enough for her to follow-up with the referral.  Tr. 509,

831.  Lastly, Plaintiff contends the updated records do not support the ALJ's

analysis because Plaintiff sought care with Dr. Garodia and had imaging of her

spine in 2013.  ECF No. 12 at 15 (citing Tr. 816-935).  However, the updated

records document only conservative treatment through the date last insured.

On this record, the ALJ reasonably concluded that Plaintiff's symptom

claims were inconsistent with her lack of treatment.  This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's

symptom complaints.

*4.  Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with

her symptom claims.  Tr. 506, 508-09, 512.  The ALJ may consider a claimant's

activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a

claimant can spend a substantial part of the day engaged in pursuits involving the

ORDER - 28

1  performance of exertional or non-exertional functions, the ALJ may find these

2  activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at

3  603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark

4  room in order to be eligible for benefits, the ALJ may discount a claimant's

5  symptom claims when the claimant reports participation in everyday activities

6  indicating capacities that are transferable to a work setting" or when activities

7  "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-

8  13.

9      Plaintiff reported playing in a competitive pool league until 2012. Tr. 509,

10  652. Plaintiff was able to continue riding her motorcycle in 2012 and reported

11  going on a 21-day motorcycle trip in October 2012, and a 30-day motorcycle trip

12  from Washington to Florida. Tr. 402, 509, 512, 553, 652, 662, 671-72. In 2013,

13  Plaintiff reported her back pain impacted her ability to sit, stand, lay down, and

14  complete her daily routine, but did not impact her ability to work, sleep, walk,

15  bend, nor engage in recreational activities. Tr. 420. In 2013, Plaintiff reported she

16  was walking on a treadmill 30 minutes per day, three to four times per week. Tr.

17  831. She also reported traveling to visit her daughter in Lake Oswego, Oregon

18  "very often." Tr. 832. While Plaintiff alleges she stopped riding a motorcycle by

19  2013, ECF No. 12 at 18, in 2015, Plaintiff reported her activities included riding

20  motorcycles, sewing, crafting, and playing pool, and she reported belonging to a

1  motorcycle group and American Legion.  Tr. 336.  In 2014, Plaintiff traveled to

2  Texas to help her daughter with her grandchild.  Tr. 322.  In 2016, Plaintiff

3  reported she was "very active," and she has family members out of town who she

4  likes to travel to visit.  Tr. 442.

5       Plaintiff contends her activities prior to the alleged onset date are of little

6  relevance; however, Social Security's policy states the record will be developed

7  one year prior to the alleged onset date, thus any evidence in the 12 months leading

8  up to the alleged onset date is relevant.  20 C.F.R. § 404.1512(b).  Plaintiff

9  contends she took a single motorcycle trip, and not two, ECF No. 14 at 9, but it is

10 unclear from the record how many motorcycle trips she took, thus the ALJ's

11 interpretation is reasonable.  Plaintiff also contends her activities, including long-

12 distance motorcycle rides, were not inconsistent with her allegations, because she

13 only sat for a maximum of 3.7 hours per day.  ECF No. 12 at 18.  However,

14 Plaintiff's activities are inconsistent with her allegations of disabling limitations

15 that prevent her from standing, walking, or sitting for any extended period of time,

16 including her allegation that she could sit for no more than 15 minutes at a time.

17 *See* Tr. 547-58.

18      On this record, the ALJ reasonably concluded that Plaintiff's activities of

19 daily living were inconsistent with her allegations. This finding is supported by

20

ORDER - 30

substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.  Plaintiff is not entitled to remand on these grounds.

**D. Lay Opinion Evidence**

Plaintiff contends the ALJ erred in failing to consider the lay opinions of Stephanie R., Craig Enneberg, Ryan Start, Casey Stout, Scott R., and Barbara Culpepper.  ECF No. 12 at 20-21.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout*, 454 F.3d at 1053.  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).  Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*,

674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness").

Plaintiff does not set forth an explanation as to how the rejection of any of the lay opinions besides Scott R.'s was allegedly harmful error. *See* ECF No. 12 at 19-21. As discussed by Defendant, the lay opinions generally discuss Plaintiff's functioning in the present tense, and the opinions do not address Plaintiff's functioning at the date last insured. ECF No. 13 at 19 (citing Tr. 802-04, 806-07). Scott R.'s statement addressed Plaintiff's functioning in 2009 and surgery in 2017 but does not specifically address her functioning in 2013. Tr. 805. Further, Scott R.'s statements largely restate Plaintiff's statements, such as indicating she has difficulty sitting and standing for longer periods of time. As discussed *supra*, the ALJ gave clear and convincing reasons to reject Plaintiff's symptom claims. Thus, the ALJ did not harmfully error in rejecting Scott R.'s statements and in failing to address the remaining lay opinions. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

ORDER - 32

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 30, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 33